UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-20416-CIV-LENARD/TORRES

**LOUIS PERRERO,**

    Plaintiff,

vs.

**SPECTATOR MANAGEMENT GROUP,**
**a/k/a SMG, a general partnership,**

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D.E. 91), DENYING DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND IV OF PLAINTIFF'S THIRD AMENDED COMPLAINT (D.E. 77), DENYING PLAINTIFF'S MOTION TO STRIKE PLAINTIFF'S INCHOATE DEPOSITION (D.E. 99), AND DENYING DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SWORN STATEMENT (D.E. 113)**

**THIS CAUSE** is before the Court on Defendant Spectator Management Group's ("SMG") Motion for Summary Judgment ("SMG's Motion," D.E. 91) filed on November 14, 2007. Plaintiff responded to SMG's Motion on December 11, 2007 ("Plaintiff's Response," D.E. 103) and SMG filed its Reply in support of its Motion on December 17, 2007 ("SMG's Reply," D.E. 108). Also before the Court are SMG's Motion to Dismiss Counts I, II, and IV of Plaintiff's Third Amended Complaint (D.E. 77) filed on August 10, 2007; Plaintiff's Motion to Strike Plaintiff's Inchoate Deposition (D.E. 99) filed on November 26, 2007; and SMG's Motion to Strike Portions of Plaintiff's Sworn Statement (D.E. 113) filed on January 2, 2008.

### I.     Factual Background

Defendant SMG is a private management company serving public assembly facilities. In South Florida, SMG manages the Miami Beach Convention Center and the Jackie Gleason Theater. SMG employed Plaintiff from January 1, 1992 until August 3, 2005. Plaintiff was hired as a "Facility Technician - Locksmith" but his job duties often included carpentry and painting. Ricardo Artalejo was hired as SMG's Human Resources Manager in 1999. Artalejo was responsible for handling employee disciplinary matters, including consulting with individual department heads to determine the most appropriate means of resolving an employee's inadequate performance and/or inappropriate conduct.

Plaintiff had a troubled history during his employment with SMG.[1] Plaintiff was cited for disciplinary problems seventeen times during his thirteen years of employment. Three of these documented disciplinary actions occurred prior to Artalejo's hiring as SMG's Human Resources Manager in 1999. The disciplinary actions range from citations for failing to report to work (no call/no show) to general insubordination.

In addition to the disciplinary actions, Plaintiff was involved in a number of conflicts and confrontations with other employees. Plaintiff appears to have instigated most of these conflicts and confrontations. For example, following an altercation with a co-worker in 1995, Plaintiff wrote a letter to his supervisors claiming that he had suffered emotional

---

[1] Plaintiff disputes almost all of the factual allegations asserted by Defendant regarding problems during Defendant's employment of Plaintiff, but these disputes are either conclusory or irrelevant unless otherwise noted herein.

distress as a result of the conflict and was fearful of his co-worker's future actions. Plaintiff's supervisor wrote in his report that the general consensus among the other employees was that Plaintiff had been instigating arguments with his co-worker for some time prior to the altercation.

Plaintiff also appears to have lied about or exaggerated alleged confrontations with other employees that he reported to his supervisors. For example, in 2002, Plaintiff wrote a letter to management alleging that a facility manager had verbally assaulted him and attempted to physically harm him by ramming a scooter into the scooter Plaintiff was driving. In his memo on the alleged incident, Artalejo reported that both witnesses vehemently denied that the incident took place as reported by Plaintiff. According to the witnesses, the facility manager did not address Plaintiff at all, did not strike his scooter, and gave him no reason to fear for his safety. Additionally, Artalejo reported in his memo that Plaintiff had admitted in a meeting that his allegations were false.

Plaintiff's problems at SMG appear to have reached a crescendo in 2005. On June 20, 2005, Plaintiff received a "final written warning before termination" for alleged insubordination, poor work performance, and failure to report to work as scheduled. Earlier in the year, on January 7, 2005, Plaintiff received a one-day suspension for insubordination and loafing.

Plaintiff's interactions with another co-worker, Darien Lavina, also became increasingly problematic. Plaintiff began training Lavina in carpentry and locksmithing in

2003. In 2005, Plaintiff complained to his supervisors that Lavina was receiving overtime while Plaintiff was not. Plaintiff proceeded to file a grievance with his union, the International Brotherhood of Electrical Workers, Local 349. After conducting an investigation, SMG concluded that Plaintiff's grievance was filled with inaccuracies. Notably, while Lavina and other employees had worked more overtime than Plaintiff in 2005, in 2004 Plaintiff had worked more overtime than Lavina and other younger employees.

On May 27, 2005, Lavina wrote his supervisors a letter stating that Plaintiff had been harassing him. On July 27, 2005, Lavina wrote a second letter complaining of harassment by Plaintiff. SMG conducted an investigation into Plaintiff's alleged harassment of Lavina. Plaintiff's co-workers told SMG management that Plaintiff had been harassing Lavina for some time and was an extremely problematic presence in the workplace.

Additionally, during the investigation into Plaintiff's alleged harassment of Lavina, several employees signed statements as to their belief that Plaintiff had made statements suggesting violence, specifically that "he was going to convert the [Miami Beach Convention Center] into a parking lot." SMG management took Plaintiff's statements to mean that he was contemplating destroying the Convention Center.

On August 3, 2005, Plaintiff was terminated. At the time of Plaintiff's termination, eleven of the fifteen employees in Plaintiff's department fell within Plaintiff's protected class (age 40 and above).

On or about August 10, 2005, Plaintiff filed a complaint with the Equal Employment

Opportunity Commission ("EEOC") alleging that SMG had discriminated against him based upon his age (the "2005 EEOC Complaint"). Specifically, in the 2005 EEOC Complaint, Plaintiff alleged:

> I.   I am 60 years old. I was employer [sic] by the above named Respondent on March 13, 1972, as a Carpenter/Locksmith. Mr. Darien Lavina, who is a [sic] younger was authorized overtime and I was not. I was discriminated against because of my age. I was retaliated against for filing an internal grievance in July 2005. As a result, I was terminated on August 3, 2005.
>
> II.  I was not given any reason for this action.
>
> III. I believe that I have been discriminated against because of my age/60 in violation of the Age Discrimination in Employment Act.

(D.E. 92, Ex. 2.)  The 2005 EEOC Complaint forms the procedural basis for the instant action.

Plaintiff had previously filed another EEOC Age Discrimination Complaint on June 6, 2003 (the "2003 EEOC Complaint").  Therein, Plaintiff alleged that SMG had refused to train him on a printing machine but had instead trained younger employees.

Plaintiff, in his Sworn Statement, portrays his disciplinary problems as a systematic attempt by SMG to discriminate against him based on his age.  Specifically, Plaintiff states that Artalejo, SMG's Human Resource Manager, subjected Plaintiff to unfounded criticism and made numerous discriminatory remarks regarding his age.  Plaintiff states in his Sworn Statement that during a disciplinary meeting, Artalejo told him, "'Vejhio, (old man) look you got your city retirement & heath [sic] care... why don't you make it easy and retire', and stated 'don't waste you [sic] time going down to the EEOC because they're tired of looking

at your ugly old face down there.'" (D.E. 102, Ex. 3 at 7.) Further, Plaintiff states that after he trained the younger Lavina, Lavina began to take over Plaintiff's old job duties and Plaintiff was increasingly assigned to isolating and undesirable work.

Plaintiff also states that prior to his termination he was offered a buyout. In his response to SMG's interrogatories, Plaintiff states that on June 3, 2005, Artalejo and other SMG managers offered him six months of severance pay and all of his accrued vacation time if he agreed to retire on June 17, 2005 and sign a release form. (D.E. 102, Ex. 21.) Plaintiff did not retire on June 17, 2005 and he never signed a release form.

## II.   Procedural Background

Plaintiff filed his Third Amended Complaint ("Complaint") on July 29, 2007. Plaintiff asserts four counts in his Complaint: (1) age discrimination under the Age Discrimination Employment Act ("ADEA"); (2) willful age discrimination under the ADEA; (3) unlawful retaliation under the ADEA; and (4) breach of contract.

In its Motion, SMG seeks to dismiss Plaintiff's entire Complaint. First, SMG seeks to dismiss Count 1 on the grounds that Plaintiff cannot establish a prima facie case of age discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). In the alternative, SMG argues that even if Plaintiff can establish a prima facie case, Count 1 should be dismissed because SMG had legitimate non-discriminatory, non-pretextual reasons to terminate Plaintiff's employment. For the same reasons, SMG argues that Count 2, willful age

discrimination, should also be dismissed. Next, Plaintiff argues for dismissal of Count 3, as Plaintiff has failed to allege a prima facie case of unlawful retaliation, and, even if he has, SMG had legitimate non-discriminatory, non-pretextual reasons to terminate Plaintiff's employment. Finally, SMG argues for dismissal of Count 4 as the record evidence does not demonstrate the existence of any contract between Plaintiff and SMG, and, even if it did, Plaintiff was the one in breach of the contract.

In his Response, Plaintiff argues that issues of material fact exist as to all four of his claims, precluding summary judgment. Plaintiff argues, <u>inter alia</u>, that the reasons SMG gave for his termination were pretextual and without factual support. Plaintiff further argues that Artalejo's ageist comments to Perrero indicate the true motivation for SMG's termination of Plaintiff. Regarding Count 3, Plaintiff argues that the record evidence demonstrates that, following his 2003 EEOC Complaint, SMG effectively demoted him in an act of unlawful retaliation. Finally, relying on his Sworn Statement, Plaintiff argues that he has adduced sufficient evidence of the existence of a contract to avoid summary judgment on Count 4.

In its Reply, SMG argues, <u>inter alia</u>, that Plaintiff has failed to proffer evidence that its legitimate, non-discriminatory reasons for terminating Plaintiff were pretextual. SMG also argues that Plaintiff's retaliation claim, Count 3, should be dismissed because Plaintiff failed to articulate the alleged retaliation in his 2005 EEOC Complaint that forms the basis of the instant action.

**III.   Standard of Review**

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party.  The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324; see also Fed.R.Civ.P. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

**IV.    Discussion**

**A.    Count I**

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).  A plaintiff may establish a prima facie case of discrimination either by (1) direct evidence of discrimination, or (2) circumstantial evidence of discriminatory intent via the

McDonnell Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

        1.     Plaintiff has not presented direct evidence of discrimination.

Direct evidence is "evidence, which if believed, proves the existence of the fact or issue without inference or presumption." Jones v. Bessemer Carraway Medical Center, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998). The Eleventh Circuit has defined direct evidence in the employment discrimination context as

> evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee... [o]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination. If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence.

Richardson v. Dougherty County, GA, 2006 WL 1526065, at *3 (11th Cir. June 5, 2006) (citations omitted). "An example of direct evidence would be a management memorandum saying, 'Fire Earley -- he is too old.'" Damon v. Fleming Supermarkets, Inc., 196 F.3d 1354, 1359 (11th Cir. 1999) (internal quotations and citations omitted).

Plaintiff has not presented direct evidence that his termination was motivated by discrimination on the basis of his age. In his Sworn Statement, Plaintiff alleges that Artalejo told him during a disciplinary meeting, "Vejhio, (old man) look you got your city retirement & heath [sic] care... why don't you make it easy and retire." (D.E. 102, Ex. 3 at 7.) This does not constitute direct evidence "whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." Richardson, 2006 WL 1526065,

10

at *3. Artalejo's comments could easily be interpreted as a sympathetic gesture to Plaintiff that he should retire instead of suffer the humiliation of being fired. The Eleventh Circuit has refused to classify far more suggestive comments as direct evidence of discrimination. See, e.g., Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1393-94 (11th Cir. 1997) (evidence that the decisionmaker told the plaintiff that "he wanted to hire a man for the position because too many women filled First Federal's officer positions" was not direct evidence that she was terminated because of her sex).

        2.      Plaintiff has proven a prima facie case through circumstantial evidence but Defendant has articulated a number of legitimate, non-discriminatory reasons for terminating Plaintiff, and Plaintiff has not proven that the reasons were pretextual.

In order to prove a prima facie case of age discrimination through circumstantial evidence, a plaintiff must prove: (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected. Damon, 196 F.3d at 1359.

Plaintiff has proven a prima facie case of age discrimination through circumstantial evidence. SMG does not dispute that Plaintiff satisfies the first two elements: he is part of the protected class and was subject to an adverse employment action. As to the third element, SMG concedes in its Reply that Corey Atkinson, a 34 year old white male, replaced

11

Plaintiff's position according to SMG's organizational chart.[2]  (See D.E. 108 at 5 n.7; D.E. 92, Ex. U at 13.)  Finally, as to the fourth element, although Plaintiff occasionally received below average performance evaluations, a number of his performance evaluations complimented the quality of his work and his knowledgeability.  (See D.E. 92, Ex. F at 19 ("Knows his job duties. Has excellent knowledge in the trade area"); D.E. 92, Ex. G at 3 ("Very knowledgeable in all areas. . . . Very detail oriented.").)  Accordingly, the Court finds that he was qualified to do the job from which he was terminated.

The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action. Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir.1997).  However, the defendant employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. at 1528 (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981) (footnote omitted).

There is no question that defendant has produced evidence of legitimate, nondiscriminatory reasons for its employment action.  In fact, the evidence is overwhelming. Plaintiff cited for disciplinary actions seventeen times in his thirteen years of employment.

---

[2] Although Plaintiff argues in his Response that he was replaced by Darien Lavina, not Corey Atkinson, the Court finds that, for the purposes of establishing a prima facie case, SMG's concession satisfies the third element.

12

His personnel file is filled with memos, citations, and signed statements evidencing a consistent pattern of loafing, insubordination, and general irascibility towards his co-workers and supervisors. During his employment with SMJ, he initiated a number of frivolous and apparently false complaints against other employees. The record evidence establishes that in 2005, his last year of employment, he received two suspensions for loafing and insubordination, engaged in a pattern of harassment towards Darien Lavina, and made what were perceived to be violent threats to blow up the Miami Beach Convention Center.

Once a defendant employer has proffered legitimate non-discriminatory reasons for its challenged action, Plaintiff must show that the Defendant employer's proffered reasons were pretextual in order to survive summary judgment. That is, if he can show that a genuine issue of fact exists as to the truth of each of the employer's proffered reasons for its challenged action, and thus permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct, then his claim may proceed. Combs, 106 F.3d at 1529, 1538.

Plaintiff has not satisfied his burden of proving that any of SMG's reasons for terminating Plaintiff's employment were pretextual. He does not dispute his long disciplinary record except to make conclusory allegations that the discipline was unfounded and that he was never offered remedial training. This is not adequate evidence of pretext. See Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 443-44 (11th Cir. 1996) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an

13

inference of pretext. . . where [an employer] has offered … extensive evidence of legitimate, non-discriminatory reasons for its actions."). Plaintiff also attempts to argue that his alleged harassment of Lavina was a pretextual reason for his termination by denying that he harassed Lavina and suggesting that Lavina made the harassment complaint to avoid sharing overtime hours with Plaintiff. Plaintiff's denial that he harassed Lavina is definitively refuted by record evidence; for example, five sworn statements from Plaintiff's co-workers state that Plaintiff had engaged in a pattern of harassing behavior towards Lavina. Additionally, Plaintiff's argument that Lavina fabricated his harassment charges is insufficient to establish pretext. See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (holding that dispute as to whether incidents the decision-marker relied on occurred is insufficient to establish pretext absent evidence that the decision-maker did not sincerely believe that they occurred). Accordingly, Plaintiff has not satisfied his burden of advancing record evidence that his harassment of Lavina was a pretextual reason for his termination. See Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006) ("To show pretext, a plaintiff must come forward with evidence. . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.") (internal citation and quotations omitted). Finally, Plaintiff argues that his violent threats to level the Miami Beach Convention Center were a pretextual reason for his termination because SMG did not seriously believe that Plaintiff would commit a violent act and because SMG did not take any steps to prevent Plaintiff from committing a

violent act. Violent threats from a troubled employee might motivate a reasonable employer to terminate the employee regardless of how seriously they take the threats, and Plaintiff's argument to the contrary is not persuasive.

Plaintiff also attempts to create a genuine issue of material fact as to pretext by arguing that Human Resources Manager Artalejo's statements in a disciplinary meeting demonstrate that a discriminatory animus more likely motivated SMG's termination of Plaintiff. In his Sworn Statement, Plaintiff claims that Atalejo told him, "'Vejhio, (old man) look you got your city retirement & heath [sic] care... why don't you make it easy and retire', and stated 'don't waste you [sic] time going down to the EEOC because they're tired of looking at your ugly old face down there.'" (D.E. 102, Ex. 3 at 7.) First, Artalejo's statements do not create genuine issues of fact as to the truth of any of the SMG's proffered reasons for its challenged action, and thus do not establish that the proffered reasons were pretextual. Combs, 106 F.3d at 1529, 1538. Second, Artalejo's alleged statements, weighed against the voluminous and unrebutted evidence of Plaintiff's troubled employment history and threats of violence, are insufficient to create a material issue of fact that SMG's reasons for terminating Plaintiff were pretextual.

Accordingly, SMG's Motion as to Count 1 is GRANTED.

**B.   Count 2**

The ADEA provides for liquidated damage awards when an employer "willfully" violates the ADEA. 29 U.S.C. § 626(b). Thus, the analysis of a claim for willful violation

15

of the ADEA is the same as the analysis of a claim for an ordinary violation of the ADEA with the added requirement of a finding of willfulness. However, as described above in Section IV.A, supra, because Plaintiff is unable to establish a violation of the ADEA, his claim in Count II for willful age discrimination under the ADEA fails. Accordingly, SMG's Motion as to Count 2 is GRANTED.

### C. Count 3

A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Mulhall v. Advance Sec., Inc. 19 F.3d 586, 589 n.8 (11th Cir. 1994). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (quoting Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)). The Eleventh Circuit has noted that "judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate" for judicial claims. Gregory, 355 F.3d at 1279-80 (internal quotations and citations omitted) (emphasis added).

Plaintiff's claim of discriminatory retaliation in the instant action is procedurally barred because it is outside the scope of his 2005 EEOC Complaint that forms the basis of the instant action and does not "amplify, clarify, or more clearly focus" the allegations in his

16

2005 EEOC Complaint. Plaintiff alleges in his Complaint that he was retaliated against following his 2003 EEOC Complaint for SMG's alleged refusal to train Plaintiff on its printing equipment. (D.E. 69 at 7.) However, in Plaintiff's 2005 EEOC Complaint, he did not make any claim of retaliation relating to his 2003 EEOC Complaint. Instead, Plaintiff only mentioned retaliation as a result of an internal grievance filed in July 2005. (See D.E. 92, Ex. 2.) The claims of retaliation made in Plaintiff's 2003 EEOC Complaint and his 2005 EEOC Complaint are wholly distinct. Thus, Plaintiff's judicial claim contains allegations of new and different acts of discrimination from those alleged in his 2005 EEOC Complaint and SMG's Motion as to Count 3 is GRANTED.

### D.     Count 4

To establish a breach of contract, it is a plaintiff's burden to prove the following: (1) a contract existed; (2) the contract was materially breached; and (3) damages flowed from that breach. See J.J. Gumberg Co. v. Janis Servs., 847 So. 2d 1048 (Fla. 4th DCA 2003). Plaintiff's breach of contract claim fails because the record evidence demonstrates that no valid contract existed between Plaintiff and SMG. Plaintiff asserts that on June 3, 2005, Artalejo and other SMG managers offered him six months of severance pay and all of his accrued vacation time if he agreed to retire on June 17, 2005 and sign a release form. (D.E. 102, Ex. 21.) However, Plaintiff did not retire on June 17, 2005 and he did not sign the release. Accordingly, Plaintiff did not provide the consideration necessary for the formation

of the contract and thus there could be no breach.[3]  SMG's Motion as to Count 4 is GRANTED.

### E.   The Other Motions

As the Court does not rely on Plaintiff's deposition testimony in granting SMG's Motion for Summary Judgment, Plaintiff's Motion to Strike Plaintiff's Inchoate Deposition is DENIED AS MOOT.  As the Court finds for Summary Judgement in favor of SMG, its Motion to Dismiss is DENIED AS MOOT and its Motion to Strike Portions of Plaintiff's Sworn Statement is DENIED AS MOOT.  Accordingly it is:

**ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (D.E. 91) is **GRANTED**.

2. Defendant's Motion to Dismiss Counts I, II, and IV of Plaintiff's Third Amended Complaint (D.E. 77) is **DENIED**.

3. Plaintiff's Motion to Strike Plaintiff's Inchoate Deposition (D.E. 99) is **DENIED.**

4. Defendant's Motion to Strike Portions of Plaintiff's Sworn Statement (D.E. 113) is **DENIED**.

---

[3] Plaintiff argues in his Opposition that he went to Artalejo's office to sign the release and execute the agreement but he could not locate anyone to present him the release.  However, Plaintiff does not cite to any record evidence in support of this assertion and thus the Court does not consider it in deciding SMG's Motion.

**DONE AND ORDERED** in Chambers at Miami, Florida this 20th day of February, 2008.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

cc:    U.S. Magistrate Judge Edwin G. Torres
       All Counsel of Record
       Case No. 06-20416-CIV-Lenard/Torres